# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JUAN ALMONACID,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

No. 04 C 4481
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is a § 2255 petition which offers four attacks on the judgment of guilty and the sentence. They are simple to state. One, Petitioner Juan Almonacid ("Almonacid") says his defense counsel gave him bad advice on whether to accept a plea. Two, he claims defense counsel should have gotten the "safety valve" reduction for him. Three, he alleges counsel should have prevented imposition of the fine on grounds of indigency. Four, he states counsel failed to make an adequate challenge to the drug quantity.

Almonacid was charged with conspiracy with intent to distribute more than five kilograms of cocaine. There were many defendants and the case was split into different trials, both here and in Vermont, but it is best characterized as the Catano conspiracy case–even though Catano was never tried and Almonacid's counsel offered his opinion that Catano was dead. Many people worked for Catano. There was evidence from other conspirators (whose role was to transport money and drugs) that Almonacid received delivery of 130 kilograms in four separate shipments–all made to Chicago. The leading transporter also testified that Almonacid had driven him to a meeting with Catano. Another conspirator (Catano's girlfriend) testified she saw Almonacid meet with Catano almost every day and she testified that Catano's only occupation

was drug dealing. A final conspirator (who was responsible for picking up and storing cocaine) testified that he heard Almonacid say that Catano's group had just moved 500 kilos of cocaine, that he saw Almonacid hand cocaine to a chemist that Catano had hired to test the drugs, and that after the conspiracy was broken up, he saw Almonacid and Catano together in Colombia.

There was very little corroboration of this from uninvolved witnesses. There was some evidence of suspicious conduct by Almonacid, who rented an apartment in his name for Catano to use in Chicago, gave useless address information when purchasing a car, and promptly moved out of a house on which the rent had been paid when the drug ring was broken suddenly by police action.

The defense was based on tough cross-examination of the accomplices and a suggestion that Almonacid was not the "Cookieman" about whom the witnesses testified. Almonacid offered the testimony of another conspirator, Demirjian (convicted in a separate trial). Demirjian testified that he was the Cookieman.

The jury returned a verdict of guilty and found that there were more than 50 kilos of cocaine. The Court of Appeals affirmed the verdict against challenges to the sufficiency of the evidence and the removal of a juror. Almonacid subsequently filed this petition under 28 U.S.C. § 2255.

Section 2255 relief is limited to situations in which a federal criminal petitioner's conviction or sentence is based on "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994). If I find that any such error occurred, I must vacate or set aside Almonacid's sentence, after which he will be discharged, resentenced,

or granted a new trial. *Lee v. United States*, 113 F.3d 73, 77 (7th Cir. 1997) (citing 28 U.S.C. § 2255). In reviewing his petition, I must review the record and draw all reasonable inferences in favor of the government. *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). However, because Almonacid has filed his petition *pro se*, his petition is entitled to a liberal reading. *Blake v. United States*, 841 F.2d 203, 205-06 (7th Cir. 1988).

The issues properly before me are only those related to the performance of counsel. There is no constitutional ground on which the sentencing decisions I made can be challenged on their merits. The law with respect to challenges to effective assistance of counsel is well developed. Almonacid needs to show that counsel made errors so serious that they fall outside of a wide range of acceptable professional conduct. If this showing is made, Almonacid must prove that he was prejudiced by these mistakes, *i.e.*, that there is a reasonable probability that the outcome would have been different if the mistakes were not made. There is a fairly strong presumption of competence and a bar against routine second-guessing. *See Strickland v. Washington,* 466 U.S. 668 (1984) *Lockhart v. Fretwell,* 506 U.S. 364 (1993) *Holman v. Gilmore,* 126 F.3d 876 (7th Cir. 1997). I consider the claims with respect to sentencing first.

The safety-valve issue revolves around the criteria that a defendant fully cooperate with the government and answer all of its questions about the offense and related offenses. All that is claimed here with respect to the safety-valve is that which Almonacid's lawyer presented to me – that Almonacid offered information that might help authorities find Catano and one other fugitive. This could not possibly be all of the information Almonacid had concerning the offense because it did not reveal his own conduct or that of others in committing the offense. Indeed, his allocution made it clear he was unwilling to speak candidly about his role in the offense. He

3

offered to help the government find two men whom the government wanted and for whose apprehension the government might well have given some benefit, but he did not give the complete information required to invoke the safety-valve, which can apply even where the government acquires no information of any value to it. Defense counsel could not have done any better than he did. He recited what the facts were and asked for leniency, which fulfills his duty. There was also no prejudice. *See United States v. Harris,* 230 F.3d 1054 (7th Cir. 2000).

The failure to argue for waiver of the fine is not ineffective assistance. Almonacid was educated and had conducted a legitimate business. He had retained counsel. His assertion that he had no assets was not verified, and whatever assets he might have would be in far-off Spain. I concluded that he had the ability to pay a fine while in custody and, indeed, he seems to be doing so. One of his reasons for seeking remission of the fine is that the Bureau of Prisons takes a percentage of the money he receives from his family in Spain in order to pay the fine. He wishes to use all the money for his own purposes. He seems to believe that the funds sent to him are not his but those of his family. Of course, when he receives them and the power to use them, they become his funds. In any event, defense counsel cannot be criticized for failing to seek remission of the fine. I doubt that Almonacid would have wanted to disclose all information concerning his finances. In any event, my assessment that the fine would be paid, at least in part, turns out to be correct and there is no proof of prejudice.

The drug quantity claim is difficult to comprehend because defense counsel did attack, with some vigor, the amount the government sought to attribute to Almonacid. In the end, I essentially accepted his argument because I attributed to Almonacid only the quantity that he personally handled. I made no formal finding because the sentence I wanted to impose, and did,

4

was permissible under both guidelines – the one the government wanted and the one the defense wanted. There is no cause to conclude that defense counsel did a bad job and, even if he had, there was no prejudice.

The core issue in this petition is the plea offer that the government stipulates that it made to Almonacid, who is serving a sentence just short of twenty years. The agreement was a plea to two counts of using a telephone to facilitate a drug trafficking offense. Had he agreed to this, Almonacid would face a maximum penalty of eight years. In fact, given the probable Guideline calculations, it would have been a minimum of eight years as well. In effect it was a deal for an eight-year sentence.

Defense counsel told Almonacid about the deal and discussed it with him. What defense counsel did was to describe his view of the evidence and recommend rejection of the plea. Almonacid understood it was his decision to make, but says that on the basis of what defense counsel said to him and to his wife, he was discouraged from accepting the plea.[1]

The rule is that defense counsel must inform their clients of plea offers and remit the decision to the client while offering their best advice. In some jurisdictions, courts rejected any argument that a conviction could be challenged for bad advice leading to rejection of a good plea deal on the grounds that the defendant received all he was due – a fair trial on the charge. A

---

[1] Almonacid argues that defense counsel had a financial incentive to discourage the plea because his fee was $15,000 for plea and $25,000 for a trial. While a fee structure might, in rare cases, bring into question the motivation of defense counsel in giving plea advice, I reject the proposition that $10,000 would be an incentive for any busy defense counsel to undertake a trial of the length of this one. The trial of this case was, and could easily have been seen in advance to be, arduous for the defense. In this case, a far better argument could be made for defense counsel's financial motivation if Almonacid had taken the plea and was now challenging advice to take the plea. The defense counsel in this case is very experienced and has shown no reluctance to negotiate for guilty pleas and to urge his clients to accept them.

defendant could pursue only a civil suit for damages against the lawyer. *See German v. United States,* 525 A.2d 596 (D.C. App. 1987). But this proposition did not carry the day. *See State v. Donald,* 10 P.3d 1193 (Ariz. Ct. App. 2000) (discussing cases). In our Circuit, a petitioner can prevail by showing that counsel was ineffective in advising rejection of a plea agreement "in the face of overwhelming evidence of guilt and an absence of viable defenses." *Gallo-Vasquez v. United States,* 402 F.3d 793, 798 (7th Cir. 2005).

In this case, it is clear the evidence was not overwhelming. No innocent witness nor law enforcement officer could offer meaningful evidence against Almonacid. As the Government notes,

> [n]o drugs were seized from Almonacid. His prints were not recovered on any seized drugs. He was not present when drugs were seized. Law enforcement never saw him handling drugs or making drug deals. He was not on tape. No phone records contained his phone number. And there was no confession.

(Gov't Resp. at 16-17).

Additionally, there were decent defenses to make. On the question of whether the witnesses identified the right defendant, there was the fact that law officers never saw Almonacid during surveillance and that the Cookieman (as he was referred to by two witnesses) was a nickname that belongs to another conspirator. There was another witness, the closest to Catano, who drew a chart of the conspirators (at the government's request) and that chart did not include Almonacid. All the important witnesses against Almonacid made deals to offer evidence in exchange for leniency. Three of these witnesses were the kinds of persons whose demeanor and backgrounds would suggest that they never expected to go to prison – persons whom an ordinary jury would believe might be especially fearful of incarceration.[2] Lastly, the absence of the

---

[2] These are the witnesses Blanca Rojas, Eric Abrams and Rivka Medow.

6

elements recited in the quoted passage from the government response would be a centerpiece of the theme of a decent defense.

Defense counsel used all these weapons. The jury could have gone either way and there was reason to believe the defense would be successful. I thought so at the time, and, based on my observation of the demeanor of prosecutors and defense counsel, I believe that they thought so too.[3] Considerable deference is owed to tactical judgment of counsel in these cases. Defense counsel's advice was not based on a misunderstanding of the law or the admissibility of evidence. His decision was based on an assessment of the weight of the evidence. It is quite impossible on this record and the events of the trial to conclude that defense counsel's conduct fall outside the ambit of professional competence. I do not pause to address the question of prejudice since counsel gave competent advice.[4]

The Petition is denied.

ENTER:

*James B. Zagel*
_____

James B. Zagel
United States District Judge

DATE: November 4, 2005

---

[3] I recall, in particular, the visible bodily indicia of relief on the part of one prosecutor when the guilty verdict was read.

[4] The government also argues that there is no prejudice proved. This is based on the fact that Almonacid has not shown a willingness ever to admit his role in the offense. I suspect that he is willing to plead guilty now but, at trial, the arrows all pointed in a different direction. There is no claim that an *Alford* plea was offered.